IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

DAVID L. KINNEY and RAYMOND P.
KINNEY, individually and on behalf of a
Class of similarly situated persons,

    Plaintiffs,

v.                                        Civil Action No. 5:15-CV-160 (Bailey)

CNX GAS COMPANY, LLC and
NOBLE ENERGY, INC.

    Defendants.

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTFICATION

NOW COME the Plaintiffs, by and through counsel, and respectfully submit this Memorandum in Support of their Motion for Class Certification

The issue of class certification in this case is relatively simple. Very early on, the Defendants acknowledged the potential members of the class and identified that those individuals are fairly easy to discern given their records systems. The named Plaintiffs in this case executed an oil and gas lease agreement with Defendant CNX Gas Company, LLC. Defendant CNX has other agreements with Defendant Noble Energy, Inc for the creation and operation of oil and gas production wells. Both CNX and Noble Energy make royalty payments to the Plaintiffs. This case deals with the manner and nature in which the Defendants have attempted to calculate and deduct post-production costs from the oil and gas royalties payable to the named Plaintiffs and, ultimately the proposed class. This case involves the specific application of specific oil and gas lease language here in West Virginia.

The 2009 Lease stated "Deep Formation Oil and Gas Royalty" payments would be defined as:

> 15% of the sales price received by Lessee for deep formation oil and gas owned by Lessor and produced and sold from the Premises **less an amount equal to $1.20 per MMBtu** with respect to heating, sweetening, gathering, dehydrating, compressing, processing, manufacturing, transporting, trucking, marketing, blending, and other costs and expenses incurred by Lessee in marketing said oil and gas and all excise, depletion, severance, privilege and production taxes that are now or hereafter levied, or assessed or charged on oil and gas owned by Lessor and produced from the Premises, which amount the parties are agreed will be presumed to be actually incurred and reasonable.

The 2009 Lease further stated "Shallow Formation Oil and Gas and Coalbed Methane Gas Royalty" payments would be defined as:

> 12.5% of the sales price received by Lessee for shallow oil and gas and coalbed methane gas owned by Lessor and produced and sold from the Premises **less an amount equal to $1.20 per MMBtu** with respect to heating, sweetening, gathering, dehydrating, compressing, processing, manufacturing, transporting, trucking, marketing, blending, and other costs and expenses incurred by Lessee in marketing said coalbed methane gas and all excise, depletion, severance, privilege and production taxes that are now or hereafter levied, or assessed or charged on coalbed methane gas owned by Lessor and produced form the Premises, which amount the parties are agreed will be presumed to be actually incurred and reasonable. [1]

The lease language allegedly permits the Defendants to subtract a flat rate production cost deduction from the plaintiffs' properties without demonstrating that post-production costs are actually being incurred. It is the Plaintiffs belief that liability related discovery will demonstrate that the Defendants are deducting costs from the plaintiffs' oil and gas royalty payments which have not been actually incurred or which were not reasonable. The Plaintiffs believe that this is in violation of West Virginia regarding the deduction of post-production costs from a lessor's royalty interest. The complaint seeks declaratory judgment relief that the questionable lease language is improper and unenforceable both in the past and into the future.

---

[1] Please see Kinney Lease agreement attached as Exhibit A.

The Complaint seeks unjust enrichment damages from the operators for their deduction and retention of those costs which were not actually incurred or reasonable. The action also seeks fraud damages for the activities of the Defendants in taking those deductions which were not actually incurred or reasonable.

The West Virginia Supreme Court of Appeals held in *Wellman v. Energy Resources, Inc.* 210 W.Va. 200, 557 S.E.2d 254 (2001) that if an oil and gas lease provides for a royalty based on proceeds received by the lessee, unless the lease provides otherwise, the lessee must bear all costs incurred in exploring for, producing, marketing, and transporting the product to the point of sale. *Wellman* at Syl. Pt. 4. *Wellman* further provided that "[i]f an oil and gas lease provides that the lessor shall bear some part of the costs incurred between the wellhead and the point of sale, the lessee shall be entitled to credit for those costs to the extent that they were actually incurred and they were reasonable. Before being entitled to such credit, however, the lessee must prove, by evidence of the type normally developed in legal proceedings requiring an accounting, that he, the lessee, actually incurred such costs and that they were reasonable." Id. at Syl. Pt. 5.

This case was originally filed in the Circuit Court of Marshall County, West Virginia. The Defendant sought removal on regular diversity and, at first, on the basis of CAFA jurisdiction. The Defendants candidly stated in their Notice of Removal the scope of the purported class. "CNX and Noble have an interest in over 100 leases throughout the State of West Virginia that contain the flat-rate post-production cost provision that Plaintiffs allege is invalid and seek reimbursement for. Many of these leases involve multiple interest owners. CNX has identified over 150 royalty owners associated with said leases. Therefore, there are, at a minimum, over 100 members in the State of West Virginia that will become a part of the proposed class[.]"

Even at the Answer and Removal stage of litigation, the Defendant could already determine that there are "over 100 leases" in West Virginia that have the disputed lease language and "over 150 royalty owners associated with said leases." The defendants even estimated that "the amount of flat-rate post-production costs sought to be reimbursed, in the aggregate, is of pecuniary interest to Defendants of approximately $2,750,000."[2]

With regard to the individual claims of the named Plaintiffs, the Defendants were able to give even further insight into their ability to identify specific information about leaseholds and the royalty payments and cost-deductions for those individuals. Noble Energy presented the affidavit of John Nedelka. Mr. Nedelka is the Noble's "Director of Revenue Accounting." He stated that "Noble maintains . . . royalty payments and deductions[ ] in its electronic Enterprise Resource Planning System ("ERP System"). Noble's ERP System captures accounting data, including royalty payments and deductions, at or near the time that payments and deductions are made. Noble's ERP System is kept in the course of its regularly conducted business activies and the recordation of royalty payments and deductions in the ERP System is a regular practice of Noble." From that information, Noble was actually able to provide print outs demonstrating the exact amount of post-production costs that had been deducted from the named Plaintiffs' royalties.[3]

CNX presented an affidavit from Jason Mumford. Mr. Mumford is an Assistant Corporate Controller for CNX Gas Company LLC's parent company, CONSOL Energy. He stated that CNX's royalty accounting system allows him "to identify the individual leases with the particular royalty deduction language quoted in Plaintiffs' Complaint, Paragraph 7-8 and 27-

---

[2] Defendant's Notice of Removal, ECF # 1 at Pages 4-5.
[3] Please see Affidavit of Nedelka attached as Exhibit B.

28." He was able to extract individual payment histories and he, too, could calculate "the amount of deductions taken by CNX."[4]

The candid statements of the Defendants in support of their positions on removal and remand demonstrate that they have the ability to easily identify all of the leases which include the type of questionable lease language challenged by the Plaintiffs. The Defendants will also easily be able to determine the type and amount of deductions take from those lease agreements. As such, the case is particularly well suited to consider class based issues related to the lease language and the deductions taken from royalty interest holder.

The proposed class in this matter would be: Those West Virginia oil and gas mineral royalty interest owners whom have oil and gas mineral leases with CNX Gas Company, LLC and Noble Energy, Inc. which provide for the flat-rate deduction of post-production costs and whom have had post-production costs deducted from their royalty payments.

## CERTIFICATION OF THE PROPOSED CLASS

The procedure for certifying a class action is governed by Rule 23 of the Federal Rules of Civil Procedure. *See, e.g., Dukes*, 131 S. Ct. at 2547-49. Rule 23 has two key components. *See Gunnells*, 348 F.3d at 423. A putative class action must satisfy each of the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. In addition, the proposed class action must fall into one of the three categories enumerated in Rule 23(b). *See Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1432 (2013). Plaintiffs here seek certification under Rule 23(b)(3), which adds two additional prerequisities: predominance and superiority.

---

[4] Please see Affidavit of Mumford attached as Exhibit C.

In determining whether or not to certify a class, "[a] district court has broad discretion ...." *Thorn v. Jefferson-Pilot Life Ins. Co.,* 445 F.3d 311, 317 (4th Cir. 2006) (quoting <u>Lienhart v. Dryvit Sys., Inc.</u>, 255 F.3d 138, 146 (4th Cir. 2001)). It is Plaintiffs' burden to "affirmatively demonstrate" compliance with Rule 23. *Dukes,* 131 S.Ct. at 2551. <u>Further, the "likelihood of the plaintiffs' success on the merits. . . is not relevant to the issue of whether certification is proper" – however, the district court "must take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification. Such finding can be necessary even if the issues tend to overlap into the merits of the underlying case." *Good v. Am. Water Works Co., Inc.,* 310 F.R.D. 274, 284 (S.D. W. Va. Oct. 8, 2015) (quoting *Thorn,* 445 F.3d at 319). *See also Brown v. Nucor Corp.,* 785 F.3d 895, 903 (4th Cir. 2015) ("the merits of a claim may be considered only when relevant to determining whether the Rule 23 prerequisites for class certification are satisfied")</u> (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1195 (2013)).

    A. *All Rule 23(a) requirements are met.*

        i.    <u>The class is sufficiently numerous.</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.,* 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.,* 584 F.2d 34 (4th Cir.1978)). However, where the class numbers twenty-five or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (eighteen class members sufficient). As stated above, the Defendants have already conceded that over 100 West Virginia leases have the flat-rate deduction language the Plaintiffs challenge. There are over 150

individuals whom have interests in those leases. To be sure, given the fractured nature of many mineral interests in West Virginia there are significant numbers of individuals who might actually have small percentages of ownership in those leases. At the numbers the Defendants have admitted to, it is clear that the proposed class is sufficiently numerous.

      ii.      <u>The seminal questions of law and fact are common to the class.</u>

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Smith v. Res-Care, Inc.,* No. 3:13–5211, 2015 WL 461529, at *4 (S.D. W. Va. Feb. 3, 2015) (quoting *Jeffreys v. Commc'ns Workers of Am., AFL–CIO,* 212 F.R.D. 320, 322 (E.D. Va. 2003).) "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes,* 131 S. Ct., at 2551 (quoting *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 157 (1982)). And the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The standard is a liberal one that cannot be defeated by the mere existence of some factual variances among class members. *Smith,* 2015 WL 461529, at *5 (citing *Jeffreys,* 212 F.R.D. at 322; *Mitchell–Tracey v. United Gen. Title Ins. Co.,* 237 F.R.D. 551, 557 (D. Md. 2006) (Factual differences among class members will not preclude certification "if the class members share the same legal theory").)

The entire basis for this action is the position that the flat-rate post-production cost lease language involved improperly permitted the Defendants to deduct alleged-post production costs which have not been actually incurred and/or which are not reasonable. Questions related to the type of deductions made, the costs that have been actually incurred and what those costs

7

represent will be common to all of the leases which have had those deductions removed. As such, there are sufficient common questions of law and fact which permit the approval of class claims.

    iii.    <u>Plaintiffs' claims are typical of those of the class.</u>

As with commonality, the threshold requirement for typicality is "not high." *See Brown v. Nucor Corp.,* 576 F.3d 149, 153 (4th Cir. 2009) (citation omitted). A plaintiff's claims are typical when the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that, in litigating his personal claims, he can reasonably be expected to advance the interests of absent class members. *See Falcon,* 457 U.S. at 156-157. "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart,* 255 F.3d at 146. "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.,* 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys,* 212 F.R.D. at 322. Commonality and typicality tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes,* 131 S.Ct. at 2551 n. 5.

The Kinney brothers entered into an oil and gas lease agreement with Defendant CNX which has language which is common to over 100 over leases CNX holds here in West Virginia. The claims of the Plaintiffs, that improper post-production costs have been deducted from their royalty shares is exactly the same claim that any and all of other potential individual class members would have. There really is no difference between the types of claims asserted by the Plaintiffs asserted on behalf of the class members. The only difference in the claims might be the amount of the deductions taken.

    iv.    <u>Plaintiffs have no conflicts with the members of the class.</u>

The adequacy requirement, which "serves to uncover conflicts of interest between named parties and the class they seek to represent," *Amchem Prods, Inc. v. Windsor,* 521 U.S. 591, 625-26 (1997), is also readily met. Plaintiffs have no conflicting interests with class members. In fact, by investigating, filing, and prosecuting this case, they have demonstrated a desire and ability to protect class members' interests. They have elected not to pursue solely their individual claims in this matter, but instead are standing up for others who, like them, have been subjected to unlawful royalty and deduction accounting by the Defendants. Just as Plaintiffs are committed to the prosecution of this case, so too are their lawyers, who are experienced in the area of class actions and will litigate this case vigorously to protect the best interests of the class. In fact, this Court recently conferred class status in another case litigated by Bordas & Bordas, PLLC.

  B.  *All Rule 23(b) requirements are met.*

    i.    <u>The common questions predominate over any individual questions.</u>

Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. Common questions predominate if classwide adjudication of the common issues will significantly advance the

adjudication of the merits of all class members' claims. "The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Lienhart,* 255 F.3d at 142 (quoting *Amchem Prods., Inc.,* 521 U.S. at 623); *Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 362 (4th Cir. 2004). The common questions discussed above predominate. Likewise, the issues common to the class predominate over any individual issues here.

   ii. <u>The class action device is superior to any other method of litigating this case.</u>

The superiority inquiry requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the advantages of class action litigation are many and clear. Defendants' liability to the proposed is a common question that would be inefficient and costly to litigate many times over, and which far outweighs any individual issues. Litigation relating to the accounting and royalty payment practices of corporate oil and gas defendants will be costly and may certainly require significant investments in expert witness document review and analysis. To have done this work for an individual case alone would have been cost-prohibitive and inefficient, considering all the same experts, documents and fact witnesses bear on the liability issues which impact the Classes in the same way. Issues related to oil and gas mineral rights are particularly costly to litigate given that many mineral interests in this state are fractured. The Defendants have already pointed out that there are over 100 leases at issue, but over 150 individuals. The named Plaintiffs themselves own a joint interest in minerals. There are likely many members of the proposed class whose current lease royalty payments and financial situations would not warrant or justify their ability to individually pursue their claims.

The class action procedure would allow for the common resolution of the underlying legal and factual issues related to post-production cost deductions and is the superior method for dispute resolution in this matter as the alternative mechanism, permitting individual lawsuits for statutory damages, would be costly and duplicative. Through the class action procedure, these common claims can be brought in one proceeding, preserving limited judicial resources and eliminating unnecessary duplication and potentially divergent judicial decisions.

A. *Class Counsel are qualified to represent the classes.*

Rule 23(g) requires that a court certifying a class also appoint class counsel. It directs a court to consider several factors, including "[t]he work counsel has done in identifying or investigating potential claims in the action; [c]ounsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; [c]ounsel's knowledge of the applicable law; and [t]he resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(C)(i). Proposed class counsel are qualified and able to represent the class. This Court has previously found Bordas & Bordas, PLLC sufficiently qualified to proceed on class action claims and the firm has handled class action litigation cases in a variety of different legal settings.

**Conclusion**

All of the necessary elements supporting the certification of class claims are easily met in this matter. The Defendants themselves have already identified the breadth of the number of individuals involved and the potential scope of certain damages. Given all of the reasons set forth above, the Plaintiffs believe it is appropriate to certify the proposed classes.

Respectfully Submitted,

By: */s/ Jeremy M. McGraw*
JAMES G. BORDAS, JR. #409
JASON E. CAUSEY #9482
JEREMY M. MCGRAW #10325
BORDAS & BORDAS, PLLC
1358 National Road
Wheeling, WV 26003 / (304) 242-8410
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

Service of the foregoing **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** was electronically filed with the Clerk of the Court using the CM/ECF system and a copy of the same was had upon the defendants by depositing a true copy thereof in the United States mail this 15th day of September, 2016, addressed to counsel for the defendants as follows:

| | |
|---|---|
| Charles F. Johns, Esq. #5629<br>Thomas J. Sengewalt, Esq. #12183<br>Steptoe & Johnson, PLLC<br>400 White Oaks Blvd.<br>Bridgeport, WV 26330<br>charles.johns@steptoe-johnson.com<br>thomas.sengewalt@steptoe-johnson.com<br>*Counsel for Defendant CNX Gas Company LLC* | Albert Sebok, Esq. #4722<br>Rodney W. Stieger, Esq. #11139<br>Jackson Kelly, PLLC<br>PO Box 553<br>Charleston, WV 25322<br>aseabok@jacksonkelly.com<br>rstieger@jacksonkelly.com<br>*Counsel for Noble Energy, Inc.* |

By:   */s/ Jeremy M. McGraw*
JAMES G. BORDAS, JR. #409
JEREMY M. MCGRAW #10325
BORDAS & BORDAS, PLLC
1358 National Road
Wheeling, WV 26003
(304) 242-8410
*Counsel for Plaintiffs*
jbordasjr@bordaslaw.com
jmcgraw@bordaslaw.com