**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**DAVID L. KINNEY** and **RAYMOND P.**
**KINNEY**, individually and on behalf
of a class of similarly situated persons,

                    Plaintiffs,

          v.                               **Civil Action No. 5:15-CV-160**
                                            Judge Bailey

**CNX GAS COMPANY, LLC** and
**NOBLE ENERGY, INC.**,

                    Defendants.

## <u>ORDER CERTIFYING CLASS</u>

Pending before this Court are Plaintiffs' Motion for Class Certification [Doc. 22] and Defendants' Motion to Strike [Doc. 32].  The Motions have been fully briefed and are ripe for decision.  In addition, this Court held oral argument on the certification motion on December 1, 2016 [Doc. 35].

With regard to the issue of class certification, the plaintiff seeks certification of a class defined as follows:

Those West Virginia oil and gas mineral royalty interest owners whom have

oil and gas mineral leases with CNX Gas Company, LLC and Noble Energy,

Inc. which provide for the flat-rate deduction of post-production costs and

whom have had post-production costs deducted from their royalty payments.

[Doc. 23, p. 5].

1

This case appears to be ideally suited for class certification because it will allow resolution of the overriding legal issue through this superior mechanism.  Presenting the legal issue on behalf of a class will allow the Court to determine, in one fell swoop on a class wide basis whether it is unlawful in West Virginia for the parties to an oil and gas lease to set an agreed flat amount for post production costs.  Plaintiffs' class certification proposal thus allows for the "consolidation of recurring common issues" which "make up the heart of Plaintiffs' case," *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 426 (4th Cir. 2003) (quoting *Central Wesleyan v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993)), and are therefore ideal for resolution through the class action mechanism.

"A district court 'has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23.'" *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001), quoting *In re American Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996).  "[P]laintiffs bear the burden . . . of demonstrating satisfaction of the Rule 23 requirements and the district court is required to make findings on whether the plaintiffs carried their burden . . .." *Thorn v. Jefferson-Pilot Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006), quoting *Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 370 (4th Cir. 2004).

In an action such as this, class certification may be granted only if the plaintiff satisfies the requirements of numerosity, commonality, typicality, representativeness, predominance, and superiority of Rule 23(a)[1] and (b)(3)[2] are met.  *Lienhart*, 255 F.3d at

---

[1]  Rule 23(a) provides:

**(a) Prerequisites**.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

2

146.

"[N]umerosity requires that a class be so large that 'joinder of all members is impracticable.' Fed.R.Civ.P. 23(a)(1). Commonality requires that 'there are questions of law or fact common to the class.' Fed.R.Civ.P. 23(a)(2). The common questions must be dispositive and over-shadow other issues." *Id.*, citing *Stott v. Haworth,* 916 F.2d 134, 145 (4th Cir. 1990). "In a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class "predominate over" other questions.'" *Id.*, at n.4, quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 609

---

(1)  the class is so numerous that joinder of all members is impracticable;
(2)  there are questions of law or fact common to the class;
(3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)  the representative parties will fairly and adequately protect the interests of the class.


[2] Rule 23(b)(3) provides:

**(b) Types of Class Actions**.  A class action may be maintained if Rule 23(a) is satisfied and if:
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
(A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D)  the likely difficulties in managing a class action.

(1997).

"Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.' *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation marks omitted). Representativeness requires that the class representatives 'will fairly and adequately protect the interests of the class.' Fed.R.Civ.P. 23(a)(4). . . . [T]he final three requirements of Rule 23(a) 'tend to merge, with commonality and typicality "serv[ing] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."' *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 337 (4th Cir. 1998) (quoting *Falcon,* 457 U.S. at 157 n. 13)." *Id.* at 146-47.

"In contrast to actions under Rule 23(b)(1) and (b)(2), Rule 23(b)(3) actions are '[f]ramed for situations in which class-action treatment is not clearly called for,' but 'may nevertheless be convenient and desirable.' *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615 (1997) (internal quotation marks omitted).  In addition to the four Rule 23(a) requirements, Rule 23(b)(3) actions such as this one must meet two requirements: predominance and superiority.  Predominance requires that '[common] questions of law or fact ... predominate over any questions affecting only individual members.'  Fed.R.Civ.P. 23(b)(3).  The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'  *Amchem,* 521 U.S. at 623.

Superiority requires that a class action be 'superior to other methods for the fair and efficient adjudication of the controversy.' Fed.R.Civ.P. 23(b)(3)." *Id*. at 147.

Plaintiffs filed this putative class action Complaint in the Circuit Court of Marshall County on November 4, 2015. The Complaint contains three counts as follows: declaratory judgment (Count 1); unjust enrichment (Count 2); and fraud (Count 3). [Doc. 1-1]. The named Plaintiffs, David L. Kinney and Raymond P. Kinney ("Kinney Plaintiffs"), entered into an Oil, Gas and Coalbed Methane Gas Lease with CNX in 2009 ("Kinney Lease") covering 69.129 acres of mineral interest owned by the Kinney Plaintiffs. [Doc. 1-1, at 2, ¶¶ 5-6]. The Kinney Lease contains provisions that expressly set forth the royalty owed to the Kinney Plaintiffs, and the specific costs that may be deducted therefrom:

(Deep Formation Oil and Gas Royalty)

15% of the sales price received by Lessee for deep formation oil and gas owned by the Lessor and produced and sold from the Premises less an amount equal to $1.20 per MMBtu with respect to heating, sweetening, gathering, dehydrating, compressing, processing, manufacturing, transporting, trucking, marketing, blending, and other costs and expenses incurred by Lessee in marketing said oil and gas and all excise depletion, severance, privilege and production taxes that are now or hereafter levied, or assessed or charged on oil and gas owned by Lessor and produced from the Premises, which amount the parties are agreed will be presumed to be actually incurred and reasonable.

(Shallow Formation Oil and Gas and Coalbed Methane)

12.5% of the sales price received by Lessee for shallow oil and gas and coalbed methane gas owned by Lessor and produced and sold from the Premises less an amount equal to $1.20 per MMBtu with respect to heating, sweetening, gathering, dehydrating, compressing, processing, manufacturing, transporting, trucking, marketing, blending, and other costs and expenses incurred by Lessee in marketing said coalbed methane gas and all excise, depletion, severance, privilege and production taxes that are not or hereafter levied, or assessed or charged on oil and gas owned by Lessor and produced from the Premises, which amount the parties are agreed will be presumed to be actually incurred and reasonable.

[Doc. 1-1 ¶¶ 5-6].

The Kinney Plaintiffs allege defendants improperly subtracted flat-rate deductions from royalty payments that were neither actual nor reasonable in contravention of the provisions quoted above.  [Doc. 1-1, at 3, ¶ 12].  In fact, the Kinney Plaintiffs argue that any flat-rate post-production provision is illegal under West Virginia law and should be terminated from Plaintiffs' leases.  [Doc. 1-1, at 8, ¶ 33].  The Kinney Plaintiffs' Complaint seeks the following relief:

(1) That this court issue a declaration stating that the flat-rate post-production costs clauses are illegal under West Virginia law and must be terminated from all mineral rights contracts existing with the defendants;

(2) That this Court issue a declaration stating that all flat-rate post production costs already subtracted from their royalty payments must be reimbursed by

6

the defendants;

(3) Punitive damages from the Defendants in order to punish them and deter them and other individuals and/or entities from engaging in similar conduct;

(4) Compensatory and general damages in an amount within the jurisdiction of this Court to be determined by the jury;

(5) Pre-judgment and post-judgment interest;

(6) Attorneys' fees and costs; and

(7) Any other specific or general relief as may become apparent as this matter progresses and such other relief as the Court deems proper.

[Doc. 1-1, at 9-10, ¶¶ 42-46, *ad damnum*].

Trial courts have great discretion to conduct and manage litigation in an efficient and equitable manner.   Manual for Comp. Litig., at Introduction, 10.13 (4th ed. 2005). Particularly in the context of a class action, Rule 23 "allows district courts to devise imaginative solutions to problems created by… [determining] individual damages issues." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *see also In re Scientific Atlantic Inc., Sec. Litig.,* 571 F.Supp.2d 1315, 1343 (N.D. Ga. 2007) (quoting *Carnegie* for this proposition and certifying class upon finding, "even if the Court ultimately concludes that aggregate damages models are not sufficiently reliable for use in this case, the Court is convinced that other viable alternatives exist to address any individual damages issues that may arise.").   Accepted methods of assessing the individual issues relating to class members include:

(1) bifurcating liability and damage trials with the same or different juries; (2)

7

appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

*Id*. (citing *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 141 (2d Cir. 2001)).

## I.     Numerosity:

"Rule 23(a)(1) requires that the class be of sufficient size that joinder of all members is 'impracticable.'  In determining whether joinder is impracticable, a court should analyze the factual circumstances of the case rather than relying on numbers alone.  *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648 (4th Cir. 1967).  Factors to be considered are 'the estimated size of the class, the geographic diversity of class members, the difficulty of identifying class members, and the negative impact of judicial economy if individual suits were required.'  *Christman v. American Cyanamid Co.,* 92 F.R.D. 441, 451 (N.D. W.Va. 1981);  *McGlothlin v. Connors,* 142 F.R.D. 626, 632 (W.D. Va. 1992)."  *In re Serzone Prods. Liab. Litig.,* 231 F.R.D. 221, 237 (S.D. W.Va. 2005) (Goodwin, J.).

"Impracticable does not mean impossible."  *Hewlett v. Premier Salons, Int'l, Inc.,* 185 F.R.D. 211, 215 (D. Md. 1997) (Chasanow, J.)(quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).  "When a class is extremely large, the numbers alone may allow the court to presume impracticability of joinder.  *Buford v. H & R Block, Inc.,* 168 F.R.D.

340, 348 (S.D. Ga. 1996) (citing *Finnan v. L.F. Rothschild & Co., Inc.,* 726 F.Supp. 460, 465 (S.D. N.Y. 1989); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D. Ill. 1986)). There is no bright line test for determining numerosity; the determination rests on the court's practical judgment in light of the particular facts of the case. *Id.* (citing *Deutschman v. Beneficial Corp.,* 132 F.R.D. 359, 371 (D. Del. 1990))." *Id.*

There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.,* 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.,* 584 F.2d 34 (4th Cir. 1978)).   However, where the class numbers twenty-five or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (eighteen class members sufficient).

At the oral argument in this case, the defendants conceded that the numerosity requirement was satisfied.

## II.   Commonality:

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class."  Rule 23(b)(3) requires that questions of law or fact common to the class predominate over any questions affecting only individual members.  The Fourth Circuit has held that "[i]n a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class "predominate over" other questions.'"  *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 n. 4 (4th Cir. 2001)(quoting *Amchem,* 521 U.S. at 609).  Because this is a class action brought under Rule 23(b)(3),

this Court will analyze the two factors together in the predominance section of this opinion. *See* **In re LifeUSA Holding Inc.,** 242 F.3d 136, 144 (3d Cir. 2001) (analyzing the two factors together).

**III.    Typicality**:

"To satisfy the typicality requirement under Rule 23(a)(3), the 'claims or defenses of the representative parties [must be] typical of the claims or defenses of the class.' *Fed.R.Civ.P.* 23(a)(3). 'A sufficient nexus is established [to show typicality] if the claims or defenses of the class and class representatives arise from the same event or pattern or practice and are based on the same legal theory.' **In re Terazosin Hydrochloride Antitrust Litig.,** 220 F.R.D. 672, 686 (S.D. Fla. 2004) (quoting **Kornberg v. Carnival Cruise Lines, Inc.,** 741 F.2d 1332, 1337 (11th Cir. 1984)); *see also* **In re Diet Drugs,** 2000 WL 1222042 at *43 (E.D. Pa. Aug. 28, 2000).   The class representatives and class members need not have suffered identical injuries or damages.   **United Broth. of Carpenters v. Phoenix Assoc., Inc.,** 152 F.R.D. 518, 522 (S.D. W.Va. 1994); *see also* **Mick v. Ravenswood Aluminum Corp.,** 178 F.R.D. 90, 92 (S.D. W.Va. 1998)."   **In re Serzone Prods. Liab. Litig.,** 231 F.R.D. 221, 238 (S.D. W.Va. 2005) (Goodwin, J.).

"The typicality requirement has been observed to be a redundant criterion, and some courts have expressed doubt as to its utility.   **Buford,** 168 F.R.D. at 350 (citing **Sanders v. Robinson Humphrey/American Express, Inc.,** 634 F.Supp. 1048, 1056 (N.D. Ga. 1986), *aff'd in part, rev'd in part on other grounds sub nom.,* **Kirkpatrick v. J.C. Bradford & Co.,** 827 F.2d 718 (11th Cir. 1987), *cert. denied,* 485 U.S. 959 (1988)).   Some courts treat typicality as overlapping with commonality, *see* **Zapata [v. IBP, Inc.**], 167 F.R.D. at

10

160; *cf. Falcon,* 457 U.S. at 157 n. 13 (noting that typicality and commonality 'tend to merge'); other courts equate typicality with adequacy of representation. *Buford,* 168 F.R.D. at 350 (citing *Alfus v. Pyramid Technology Corp.,* 764 F.Supp. 598, 606 (N.D. Cal. 1991)). Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. *Zapata,* 167 F.R.D. at 160 (citing 1 *Newberg on Class Actions* § 3.13).   A plaintiff's claim may differ factually and still be typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.' *Id.* (quoting 1 *Newberg on Class Actions* § 3.13).  So long as the plaintiffs and the class have an interest in prevailing in similar legal claims, then the typicality requirement is satisfied. *Buford,* 168 F.R.D. at 351 (citing *Meyer v. Citizens and Southern Nat'l Bank,* 106 F.R.D. 356, 361 (M.D. Ga. 1985)).  The existence of certain defenses available against plaintiffs that may not be available against other class members has been held not to preclude a finding of typicality. *See id.* (citing *International Molders' and Allied Workers' Local Union No. 164 v. Nelson,* 102 F.R.D. 457, 463 (N.D. Cal. 1983)).  The burden of showing typicality is not meant to be an onerous one, but it does require more than general conclusions and allegations that unnamed individuals have suffered discrimination. *Kernan,* 1990 WL 289505, at *3 (citing *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 556 (8th Cir. 1982), *cert. denied,* 460 U.S. 1083 (1983))." *Hewlett v. Premier Salons, Int'l, Inc.,* 185 F.R.D. 211, 216 (D. Md. 1997) (Chasanow, J.).

In this case, the claims of each of the putative class members all turn on the issue

of whether the flat rate deduction provision in the leases is proper and enforceable. Furthermore, the defendants have not challenged this requirement.  This Court finds that the requested class satisfies the typicality requirement.

## IV.   Adequacy of Representation:

"The final requirement of Rule 23(a) is set forth in subsection (4), which requires that 'the representative parties will fairly and adequately protect the interests of the class.' *Fed.R.Civ.P.* 23(a)(4).  This determination requires a two-pronged inquiry: (1) the named plaintiffs must not have interests antagonistic to those of the class; and (2) the plaintiffs' attorneys must be qualified, experienced and generally able to conduct the litigation**. Hewlett v. Premier Salons Int'l, Inc.,** 185 F.R.D. 211, 218 (D. Md. 1997)."  **Serzone**, 231 F.R.D. at 238.

The defendants do not contest plaintiffs' counsel's ability to conduct the litigation, nor does this Court.  The defendants have not pointed out any interests that the named plaintiffs have that are antagonistic to the interests of the proposed class.

Accordingly, this Court finds that the named plaintiffs and their counsel are able to fairly and adequately protect the interests of the class.

## V.   Predominance:

The first factor under Rule 23(b)(3) requires that the questions of law or fact common to all class members predominate over questions pertaining to individual members.  *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. at 239.  Common questions predominate if class-wide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims.

"The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Lienhart*, 255 F.3d at 147 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004).

In this case, the Court finds that the issues common to all class members predominate over any individual questions. The liability phase of this case presents the following issue, which is common to all potential class members:

> whether the use of an oil and gas lease containing flat rate deductions for
> post production expenses is proper under West Virginia law.

The common question discussed above predominates. To put this into perspective, either it was permissible for the defendants to use leases with flat rate deductions for post production expenses or not. Surely this determination is much more straightforward than other certified classes of which the Fourth Circuit has approved. *See, e.g., Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015) (vacating district court's decertification of Title VII class of black steelworkers and remanding with instructions to certify the class in light of the "inherent cohesiveness of the class"); *Gray v. Hearst Communs., Inc.*, 444 Fed. Appx. 698, 702 (4th Cir. 2011) (affirming certification of advertisers' class claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive trade practices against directory distributors upon finding that "the common question regarding [defendant's] distribution obligation predominates over any individual issues because the putative class members all assert injury from the same action (*i.e.* failure by [defendant] to follow its standard distribution practice), and determination of

13

whether [defendant] breached its standard distribution obligation will resolve in one stroke an issue that is central to the validity of the class members' breach of contract claims"); ***Central Wesleyan v. W.R. Grace & Co.***, 6 F.3d 177, 188 (4th Cir. 1993) (affirming conditional certification of a nationwide class of colleges and universities with asbestos in their buildings despite the "daunting number of individual issues", including the ability of each college to prove liability, differing statutes of limitation, differing asbestos products and exposures, present in the case).

Courts nationwide frequently recognize that cases involving overcharging are appropriate for class treatment. *See **Mahon v. Chicago Title Ins. Co.,*** 296 F.R.D. 63 (D. Conn. 2013) (certifying class of persons overcharged for title insurance in connection with refinance transactions, explaining that "[t]he statutorily filed premium rates must be applied uniformly" and that in "each transaction, (i) the putative class member paid the premium charged/collected by [defendant] in exchange for a title insurance policy; (ii) [defendant] was required by law to charge a premium in accordance with its filed rates; (iii) the putative class member paid the premium charged by [defendant], which was an overcharge; and (iv) the putative class member was damaged by being overcharged for the title insurance); ***Spano v. Boeing Co.,*** 294 F.R.D. 114 (S.D. Ill. 2013) (certifying ERISA class with various subclasses alleging imposition of excessive fees, noting several times that certification was appropriate because plaintiffs had alleged that all class members had complaints concerning the excessive fees); ***Markocki v. Old Republic Nat'l Title Ins. Co.,*** 2015 WL 3421401 (E.D. Pa. May 27, 2015) (declining to decertify class claim under Real Estate Settlement Procedures Act where common question was whether defendant split a charge

for settlement services not actually performed, and question predominated over any individual issues).

The issues common to the class predominate over any individual issues here.  The central issue is whether the use of an oil and gas lease containing a fixed amount for post production expenses is proper or not.  This common question is broad and applies to all potential class members.  Accordingly, the predominance requirement is met.

Inasmuch as the defendants' primary arguments against certification relate to the predominance requirement, this appears to be an appropriate place to address their concerns.

First, the defendants argue that the plaintiffs have failed to present evidence supporting class certification.  The defendants are correct that such a showing is required.  A plaintiff cannot merely plead the elements of class certification - evidence supporting class certification must be presented.  *EQT Prod. Co. v. Adair*, 764 F.2d 347, 357 (4th Cir. 2014) (citing *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)).  Many jurisdictions require plaintiffs to prove the elements of Rule 23 by a preponderance of the evidence, "rather than by some lesser standard such as 'some showing' or a 'threshold showing.'  *See* 5 *Moore's Federal Practice*, § 23.83 (Matthew Bender 3d Ed.) (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d. Cir.  2008); *In re Hydrogen Peroxide Antitrust Litig.*,  552 F.3d 305, 320 (3d. Cir. 2008);  *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 811 (7th Cir. 2012)); *See also In re Mills Corp. Securities Litigation*, 257 F.R.D. 101 (E.D. Va. 2009); *In re Safety-Kleen Corp.*

15

*Bondholders Litigation*, 2004 WL 3115870, at *2 (D. S.C. 2004).   Additionally, other circuits have determined that a district court "**must** address the lease language issue as it relates to Rule 23 before certifying the class." *Chieftain Royalty Co. v. XTO Energy, Inc.*, 528 F.App'x 938, 942 (10th Cir. 2013)) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.12 (1978)) (citing *Comcast Corp.*, 133 S.Ct. at 1432) (emphasis added).

In *Gariety v. Grant Thornton, LLP*, the Fourth Circuit Court of Appeals reversed class certification because the district court assumed the plaintiff's allegations regarding class certification to be true and did not require the plaintiff to present supporting evidence. 368 F.3d at 365-67.   By failing to look beyond the pleadings and "conduct a rigorous analysis" for class certification, the court "default[ed] on the important responsibility conferred on the courts by Rule 23 of carefully determining the class action issues and supervising the conduct of any class action certified." *Id.* at 367; *see also* *Miles v. Merrill Lynch & Co.*, 471 F.3d 24, 40-41 (2d Cir. 2006).

This Court finds that the plaintiffs have, in fact, presented sufficient evidence. Plaintiffs cited defendants' affidavits and statements made in support of removal in this case. In its Motion for Class Certification, plaintiffs cited defendant CNX's Notice of Removal, which stated it had already determined there are "over 100 leases" in West Virginia with the disputed lease language and "over 150 royalty owners associated with said leases." [Doc. 1, p. 4].  Moreover, plaintiffs quoted defendant CNX's estimate that "the amount of flat-rate post-production costs sought to be reimbursed, in the aggregate, is of pecuniary interest to defendant of approximately $2,750,000," which demonstrates that flat-rate post-production costs have in fact been deducted from royalty payments.  [Id. at 7].

Plaintiffs' Motion for Class Certification also cited the affidavit of Jason Mumford, an Assistant Corporate Controller for CNX Gas Company LLC's parent company, CONSOL Energy.  [Doc. 11-4].  In his affidavit, Mr. Mumford states that CNX's royalty accounting system would allow him "to identify the individual leases with the particular royalty deduction language quoted in Plaintiffs' Complaint[.]" [Id. at 2].  Furthermore, Mr. Mumford stated he was able to extract individual payment histories and could calculate the deductions taken by CNX.  [Id.].

Additionally, the Memorandum in Support of Plaintiffs' Motion for Class Certification cited to an affidavit provided by Mr. John Nedelka, Director of Revenue Accounting for Noble Energy.  [Doc. 11-3].  Mr. Nedelka's affidavit stated:

> Noble maintains. . . royalty payments and deductions[ ] in its electronic Enterprise Resource Planning System . . . [which] captures accounting data, including royalty payments and deductions, at or near the time that payments and deductions are made.  Noble's ERP System is kept in the course of its regularly conducted business activities and the recordation of royalty payments and deductions in the ERP System is a regular practice of Noble.

[Id. at 1-2].

Moreover, Noble has already provided print outs demonstrating the exact amount of post-production costs deducted from the named plaintiffs' royalties.  [Doc. 11-2].

Defendant argues that this Court's rigorous examination cannot accept defendant's "allegations at face value" and, instead, must focus on "*the evidence* to determine whether plaintiffs have demonstrated that all the requirements of Rule 23 are satisfied here." [Doc. 24 at 10].  Defendants attempt to draw a distinction by stating that the affidavits were

17

provided in the removal stage and "cannot provide the sole basis of Class Certification." [Id. at 11]. However, affidavits of individuals with knowledge of facts relevant to this case are admissible evidence, regardless of when the evidence was provided.

"[C]ourts must rigorously examine whether plaintiffs have met the prerequisites of Rule 23(a) at the certification stage, an analysis that will often overlap with the merits of a claim." ***Brown v. Nucor Corporation***, 785 F.3d 895, 903 (4th Cir. 2015) (citing ***Wal-Mart Stores, Inc. v. Dukes***, 564 U.S. 338, 350 (2011)). However, the ***Brown*** court also clarified that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." ***Id.*** (citations omitted). "Instead, the merits of a claim may be considered only when 'relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" ***Id.*** (citing ***Amgen Inc. v. Conn. Ret. Plans & Trust Funds***, 133 S.Ct. 1184, 1194-95 (2013)).

Second, the defendants argue that the members of the proposed class are not readily identifiable. Yet they admit that they are making royalty payments and that their accounting systems permit them to discern which leases have the flat-rate post production cost provision. Assuming that the defendants know to whom they are making the payments under the flat rate leases - not a far-fetched assumption - then the members of the class are readily identifiable.

While the defendants complain that little discovery has been completed, the affidavits filed in connection with the removal under CAFA obviate the need for significant discovery at this point.

The defendants do raise an issue which presents a concern to the Court - the issue

18

of coal bed methane or "CBM."  West Virginia Code Section 22-21-1 *et seq.*, the statute in which the West Virginia legislature addressed the CBM ownership issue, "creates a mechanism whereby those who wish to produce coalbed methane may request the 'unitization' of a given area and apply for a permit." ***Energy Development Corp. v. Moss***, 214 W. Va. 577, 593, 591 S.E.2d 135, 151 (2003).  After the operators work with the CBM Review Board to establish a unit, "the operators must then contact all the parties that might have an interest in the coalbed methane." *Id*.  Through this statute, the legislature does not seek to determine who owns the CBM, but rather "requires that notice [be given] to all parties who might have some interest in the coalbed methane: surface owners, coal owners, coal operators, and the owners, lessees, and operators of oil and gas wells." *Id*. If the CBM Review Board approves the unit and pooling order, West Virginia Code Section 22-21-17(a)(i) requires that "[e]ach pooling order issued shall provide for the establishment of an escrow account into which the payment of costs and proceeds attributable to any conflicting interests shall be deposited and held for the interest of the claimants. . .."

In this Court's opinion, issues surrounding the CBM ownership precludes the inclusion in the class of CBM royalties which are being paid the an escrow established as noted above.  Accordingly, the class definition will be reformulated to provide as follows:

> Those West Virginia oil and gas mineral royalty interest owners whom have oil and gas mineral leases with CNX Gas Company, LLC and/or Noble Energy, Inc. which provide for the flat-rate deduction of post-production costs and whom have had post-production costs deducted from their royalty payments, but excluding those portions of leases where royalties are being

19

paid into a coal bed methane escrow account.

To be clear, if royalties are being paid under a lease for both coal bed methane and oil and gas, with the oil and gas royalties being paid to a lessor, but with the CBM royalties being paid into an escrow account, the lessees would be part of the class with regard to the oil and gas royalties, but not with regard to the CBM royalties.

Third, defendant Noble Energy argues that there **may** be leases like the Kinney lease that allow for the costs of gathering, transportation, compression and processing, but other leases which only allow for the costs of gathering, transportation, and compression. Upon questioning at oral argument, counsel admitted that he did not know whether any such disparity existed, but was speculating because no discovery had been done. The Court finds this argument to be disingenuous. The leases in question are in the possession of the defendants. They were and are free at any time to examine those leases. Whether discovery has taken place has nothing to do with it.

The defendants next argue that the fraud claims are not proper for class treatment due to the necessary individualized inquiry. Defendants argue that:

Under West Virginia law, the elements of fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Highmark West Virginia, Inc. v. Jamie*, 221 W. Va. 487, 493, 655 S.E.2d 509, 515 (2007) (citations omitted). Claims of fraud inherently require individualized inquiries on reliance and knowledge.

20

*Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998).  This creates such an immense barrier to class certification that federal circuit courts flatly deny class actions based on fraud where individual reliance is an issue. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996).

The Fourth Circuit has readily held that "fraud and negligent misrepresentation have analogous elements.  Because proof of reliance is generally individualized to each plaintiff allegedly defrauded, fraud and negligent misrepresentation claims are not readily susceptible to class action treatment, precluding certification of such actions as a class action." *Gariety*, 368 F.3d at 362; *Broussard*, 155 F.3d at 337 (4th Cir. 1998) (citations omitted); *see also Basic, Inc. v. Levinson*, 485 U. S. 224 (1988) ("[r]equiring proof of individualized reliance from each member of the proposed class effectively would have prevented [plaintiffs] from proceeding with a class action, since individual issues then would have overwhelmed the common ones.").

Plaintiffs make only conclusory allegations that CNX made material misrepresentations to induce them into signing a lease with a flat-rate royalty deduction provision. [Doc. 1-1, p. 9, ¶ 39-41]. It is Plaintiffs' burden to show that each class member received uniform representations and reasonably relied upon these alleged misrepresentations; this they cannot do.  To prove reasonable reliance, the Court would have to conduct a "fact intensive

inquiry" into what each lessor actually knew about the royalty provision and the extent to which they relied on CNX's alleged misrepresentations in signing a lease agreement.   Plaintiffs' cannot ignore the unique, individualized facts associated with each class member because such facts are central to proving Plaintiffs' underlying fraud claim.  Therefore, Plaintiffs' Motion for Class Certification should be denied for failing to meet the commonality requirement of Rule 23(a).

[Doc. 24, pp. 16-17].

In response, the plaintiffs rely upon this Court's decision in ***Alig v. Quicken Loans***, Civil Action No. 5:12-CV-114, *22 (N.D. W.Va. June 2, 2016), quoting the following passage:

[u]nder West Virginia law there is no requirement to show reliance in claims involving concealment.  Logically, it would be impossible to even make such a showing: How can anyone prove that they relied on a fact that was concealed from their knowledge?  Even the higher standard for fraudulent concealment would not require proof of reliance, but instead involves only "concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." ***Livingston v. K-Mart Corp.***, 32 F.Supp.2d 369, 374 (S.D. W.Va. 1998) (Haden, J.) (citing ***Pocahontas Min. Co. Ltd. P'ship v. Oxy USA, Inc.***, 202 W. Va. 169, 175, 503 S.E.2d 258, 264 (1998).

[Doc. 28, p. 9].

In **_Alig_**, however, the lender concealed from the borrower the fact that it had provided a target value to the real estate appraiser.  In this case, there is no comparable concealment.  The class claims for fraud will not be certified.

The defendants next argue that the unjust enrichment claims are not suitable for class treatment.  The defendants argue that "[a] claim for unjust enrichment typically entails the establishment of three elements: '(1) a benefit conferred upon the plaintiff, (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.'  **_Stand Energy Corp. v. Columbia Gas Transmission Corp._**, 2008 WL 3891219, at *20 (S.D. W. Va. Aug. 19, 2008) (noting that plaintiffs' unjust enrichment claims failed to meet the predominance requirement under Rule 23 because the claim required 'individualized proof.').  In a claim for unjust enrichment, the court looks to the benefit conferred upon the party who is unjustly enriched, not the total amount of lost profits. **_Id_**.

As explained below, this Court does not believe that the arithmetical calculations as to the amount of overcharging, if any, precludes certification of the class.

The final argument made by defendants is that the proposed class constitutes a "fail-safe" class.  That argument was withdrawn at oral argument.

## VI.    Superiority

"The superiority test of Rule 23(b)(3) requires the court to find that the class action instrument would be better than, not just equal to, other methods of adjudication.  The four factors listed in this subsection (interest in controlling individual prosecutions, existence of

23

other related litigation, desirability of forum, and manageability) are simply a guideline to help the court determine the benefit of the proposed class action.  Advisory Committee's Notes to Fed.R.Civ.P. 23."  ***Hewlett v. Premier Salons, Intern., Inc.***, 185 F.R.D. 211, 220 (D. Md. 1997).

**A.   Interest in controlling individual prosecutions**

"The first factor identified in the rule is 'the interest of members of the class in individually controlling the prosecution or defense of separate actions.'   Fed.R.Civ.P. 23(b)(3)(A).  'This factor has received minimal discussion in Rule 23(b)(3) actions.'  ***Buford***, 168 F.R.D. at 361 (quoting 1 *Newberg on Class Actions* § 4.29).  According to the drafters of the rule:

> The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action.  On the other hand, these interests may be theoretic[al] rather than practical; the class may have a high degree of cohesion and prosecution of the action through representatives would be quite unobjectionable, or the amounts at stake for individuals may be so small that separate suits would be impracticable.

Advisory Committee's Notes to Fed.R.Civ.P. 23."  ***Hewlett***, at 220-21.

This case falls into the latter category, considering the likely relatively small potential individual recoveries, and fact that no other cases appear to have been filed.

**B.   Existence of other related litigation**

"Under Rule 23(b)(3)(B), the court should consider the 'extent and nature of any litigation concerning the controversy already commenced by or against members of the

class.'   This factor is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits.  7A *Federal Practice and Procedure* § 1780, at pp. 568-69.  'If the court finds that several actions already are pending and that a clear threat of multiplicity and a risk of inconsistent adjudications actually exist, a class action may not be appropriate since, unless the other suits can be enjoined, which is not always feasible, a Rule 23 proceeding only might create one more action. . ..  Moreover, the existence of litigation indicates that some of the interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action.  Rather than allowing the class action to go forward, the court may encourage the class members who have instituted the Rule 23(b)(3) action to intervene in the other proceedings.'  *Id*. at 569-70."  ***Hewlett***, at 221.

This factor is, in this case, a non-factor, since this Court has been made aware of no other lawsuits against the defendants concerning this issue.

## C.    Desirability of forum

Rule 23(b)(3)(C) requires the court to evaluate the desirability of concentrating the litigation in a particular forum.  Because all of the potential class members are residents of the State of West Virginia, because the class representatives and class counsel live here, and because defendants have counsel here, this forum is as good as any.

## D.    Manageability

"The last factor that courts must consider in relation to superiority is the difficulty that may be 'encountered in the management of the class action.'  Fed.R.Civ.P. 23(b)(3)(D). 'Of all the superiority factors listed in Rule 23, *manageability* has been the most hotly contested

and the most frequent ground for holding that a class action is not superior.' **Buford***,* 168 F.R.D. at 363 (quoting 1 *Newberg on Class Actions* § 4.32).   Some courts have said, however, '[t]here exists a strong presumption against denying class certification for management reasons.' **Id***.* (citing **In re Workers' Compensation***,* 130 F.R.D. 99, 110 (D. Minn. 1990); **In re South Central States Bakery Prod. Antitrust Litig.***,* 86 F.R.D. 407, 423 (M.D. La. 1980))."   **Hewlett***,* at 221.

"The manageability inquiry includes consideration of the potential difficulties in identifying and notifying class members of the suit, calculation of individual damages, and distribution of damages.   **Six Mexican Workers v. Arizona Citrus Growers***,* 904 F.2d 1301, 1304 (9th Cir. 1990);   **Maguire v. Sandy Mac, Inc.***,* 145 F.R.D. 50, 53 (D. N.J. 1992); **Kernan** [**v. Holiday Universal, Inc.***],* 1990 WL 289505 at *7 [D. Md. Aug. 14, 1990];   **In re Folding Carton Antitrust Litig.***,* 88 F.R.D. 211, 216 (N.D. Ill. 1980)."   **Hewlett***,* at 221-22.

In **Gunnells v. Healthplan Servs., Inc.***,* 348 F.3d 417 (4th Cir. 2003), the Fourth Circuit stated:

First, it appears likely that in the absence of class certification, very few claims would be brought against TPCM, making "the adjudication of [the] matter through a class action ... superior to no adjudication of the matter at all."   *See* 5 *Moore's Federal Practice* § 23.48[1] (1997).   Thus, class certification will provide access to the courts for those with claims that would be uneconomical if brought in an individual action.   As the Supreme Court put the matter, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for

26

any individual to bring a solo action prosecuting his or her rights." ***Amchem***,

521 U.S. at 617 (citation omitted).

348 F.3d at 426.

In this case, the plaintiffs' claims are easily susceptible to resolution on a classwide basis.  In the event that the class would become unmanageable, this Court can decertify the class. ***Gunnells v. Healthplan Servs., Inc.***, 348 F.3d at 426 (4th Cir. 2003); ***Central Wesleyan College v. W.R. Grace & Co.***, 6 F.3d 177, 184 (4th Cir. 1993).

Likewise, in the unlikely event that damages issues would require individual inquiry, the damage issues may be bifurcated.  "Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification.  In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations.   *See* Fed.R.Civ.P. 23 advisory committee's note (1966 Amendment, subdivision (c)(4)) (noting that Rule 23(c)(4) permits courts to certify a class with respect to particular issues and contemplates possible class adjudication of liability issues with 'the members of the class ... thereafter ... required to come in individually and prove the amounts of their respective claims.');  *see also* 5 *Moore's Federal Practice* § 23.23[2] (1997) ('[T]he necessity of making an individualized determination of damages for each class member generally does not defeat commonality.').  Indeed, '[i]n actions for money damages under Rule 23(b)(3), courts *usually* require individual proof of the amount of damages each member incurred.'  *Id.* at § 23.46[2][a] (1997) (emphasis added).  When such individualized inquiries are necessary, if 'common questions predominate over individual questions as to liability, courts generally find the

27

predominance standard of Rule 23(b)(3) to be satisfied.' *Id.*"  *Gunnells*, at 427-28.

"Courts have routinely rejected this argument, concluding, as we have in previous cases, that the need for individualized proof of damages alone will *not* defeat class certification.  *See Central Wesleyan,* 6 F.3d at 189;  *Hill v. W. Elec. Co., Inc.,* 672 F.2d 381, 387 (4th Cir. 1982) ('Bifurcation of ... class action proceedings for hearings on ... damages is now commonplace.');  *Chisolm v. TranSouth Fin. Corp.,* 184 F.R.D. 556, 566 (E.D. Va. 1999) (collecting cases)."  *Gunnells*, at 429 (emphasis in original).

Rule 23(g) requires that a court certifying a class also appoint class counsel.  The Rule directs a court to consider several factors, including "[t]he work counsel has done in identifying or investigating potential claims in the action; [c]ounsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; [c]ounsel's knowledge of the applicable law; and [t]he resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(C)(i).

Proposed class counsel are qualified and able to represent the class.  Jason Causey and the attorneys of Bordas & Bordas are experienced consumer class action litigators.

For the reasons stated above, Plaintiffs' Motion for Class Certification [Doc. 22] will be granted.  This Court will conditionally certify the following class:

> Those West Virginia oil and gas mineral royalty interest owners whom have
>
> oil and gas mineral leases with CNX Gas Company, LLC and/or Noble
>
> Energy, Inc. which provide for the flat-rate deduction of post-production costs
>
> and whom have had post-production costs deducted from their royalty
>
> payments, but excluding those portions of leases where royalties are being

paid into a coal bed methane escrow account.

With respect to the Motion to Strike [Doc. 32], inasmuch as this Court has denied class certification on the fraud claims, the Motion is denied as moot.

### Conclusion

For the reasons stated above:

1.      Plaintiffs' Motion for Class Certification [**Doc. 22**] is **GRANTED**.  This Court will conditionally certify the following class:

> Those West Virginia oil and gas mineral royalty interest owners whom have oil and gas mineral leases with CNX Gas Company, LLC and/or Noble Energy, Inc. which provide for the flat-rate deduction of post-production costs and whom have had post-production costs deducted from their royalty payments, but excluding those portions of leases where royalties are being paid into a coal bed methane escrow account.

2.      Defendants' Motion to Strike [**Doc. 32**] is **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**:  January 6, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

29